**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

SLEP-TONE ENTERTAINMENT CORPORATION,

Plaintiff,

v.

HEATHER LAPADAT d/b/a TWIN CITY KARAOKE

Defendant.

Civil Action No.: 0:14-cv-04737

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

**COMPLAINT**

The Plaintiff, Slep-Tone Entertainment Corporation ("Slep-Tone"), by its undersigned counsel, hereby complains of the Defendant, Heather Lapadat d/b/a Twin City Karaoke (hereinafter "Defendant"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for trademark infringement and unfair competition arising under 15 U.S.C. §§ 1114 and 1125. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

2. This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to Slep-Tone's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

3. This Court has supplemental jurisdiction over the subject matter of Slep-Tone's state law claim pursuant to 28 U.S.C. § 1367(a), in that the claim is so related to Slep-Tone's federal claims that they form part of the same case or controversy.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in the State of Minnesota and the federal judicial district for the District of Minnesota.

5. This Court has personal jurisdiction over the Defendant, in that the Defendant resides in this State and federal judicial district and conducts significant business here, and in that the acts of which the Defendant stand accused were undertaken in this State and federal judicial district.

**THE PLAINTIFF**

6. Plaintiff Slep-Tone is a North Carolina corporation having its principal place of business in Pineville, North Carolina.

**THE Defendant**

7. HEATHER LAPADAT ("Defendant") is a Minnesota individual having an address in St. Paul, Minnesota that has provided karaoke entertainment to various venues in Minnesota, concentrated in the Twin Cities area.

8. Upon information and belief, Defendant does business as "TWIN CITY KARAOKE".

9. Upon information and belief, Defendant HEATHER LAPADAT is the owner and principal moving spirit of TWIN CITY KARAOKE, who is personally involved in and responsible for the management and operations of TWIN CITY KARAOKE, and who personally committed or caused to be committed the acts alleged herein.

**BACKGROUND FACTS**

10. Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the trademark SOUND CHOICE.

11. Slep-Tone is recognized as a leading producer of high-quality karaoke accompaniment tracks and has invested more than $18 million to re-record and replicate the authentic sound of approximately 18,000 popular songs across different eras and genres of music.

12. Slep-Tone's dedication to producing music of the highest quality and the most authentic character led to its SOUND CHOICE label being the most recognizable and sought-after in the industry.

13. Throughout its history, Slep-Tone has released its products for commercial use exclusively on physical media—initially, cassette tapes, and then compact discs beginning in approximately 1994.

14. Originally, Slep-Tone's compact discs contained karaoke tracks encoded in a special format known as "CD+G," or "compact disc [audio] plus graphics," that allows for synchronized playback of audio and video suitable for prompting singers with lyrics cues.

15. CD+G discs required special players that were capable of decoding the CD+G format.

16. More recently, computer technology that allows the karaoke tracks stored on compact discs in CD+G format to be decoded and "ripped" (copied) to a computer hard drive has become widely available.

17. Copies of karaoke tracks stored on media other than the original compact discs are referred to as "media-shifted copies" because they have been duplicated from the original media and written to non-original media.

18. Media-shifting also frequently involves format-shifting, the conversion from the original format (such as CD+G) to another format (such as MP3+G or WAV+G).

19. As the price of computer hard drives of ever-larger size has fallen, professional users now have the technical ability to store a large number of karaoke accompaniment tracks on hard drives for convenient transport to their karaoke shows, without also carrying large numbers of compact discs.

20. As a result, most professional karaoke operators have shifted to the use of ripped karaoke tracks stored on computer media such as hard drives as a matter of convenience.

21. However, the same technology is capable of being used not only for convenience but also to allow—on a technical level—the operator to use more music than he or she has paid for and, in some cases, to avoid paying for music at all.

22. Karaoke operators, like the Defendant, have used the available technology to copy one purchased disc to two or more computer systems for simultaneous use; to copy their patrons' discs to the operator's computer hard drive at a show; to "swap" song files with other operators; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with copies of karaoke tracks; and to sell off their original media in the secondary market once they have ripped those media to a hard drive.

23. The foregoing activities nearly drove Slep-Tone out of business because it became relatively easy to obtain free, or at a nominal cost, illicit copies of products that would cost tens of thousands of dollars if purchased at retail.

24. Historically, Slep-Tone opposed the shifting of SOUND CHOICE karaoke tracks to alternative media, warning purchasers of CD+G discs that unauthorized copying was a violation of applicable laws.

25. Beginning in 2009, Slep-Tone established a media-shifting policy ("MSP") that imposes mandatory rules for karaoke operators who use media-shifted copies of SOUND CHOICE karaoke tracks to provide commercial karaoke services.

26. Briefly stated, the MSP requires compliance with four conditions: (a) 1:1 ("one-to-one") correspondence, meaning that for every media-shifted SOUND CHOICE karaoke track on a given medium such as a computer hard drive, the operator owns and maintains possession of a lawful original SOUND CHOICE karaoke track on its original medium, on a one-copy-for-one-original basis; (b) that the original media that form the basis for 1:1 correspondence are placed "on the shelf," i.e., not used for any purpose at all; (c) that the operator notify Slep-Tone that he or she has media-shifted karaoke tracks; and (d) that the operator submit to and be certified as having passed an audit of the operator's systems to verify complete compliance with the MSP.

27. The basis of Slep-Tone's authority to require compliance with the MSP is its right to control the commercial use of its federally registered trademarks and, as to some tracks, its ownership of copyright in the synchronized audiovisual words represented by and in the sound recordings associated with those tracks.

28. If a karaoke operator complies with all four conditions of the MSP, then that operator is granted permission from Slep-Tone, co-extensive only with Slep-Tone's rights in the subject matter, to use the media-shifted copies to provide commercial karaoke services.

29. If a karaoke operator fails to comply with any of the conditions of the MSP, then none of the media-shifting the operator has conducted is permitted, authorized, or tolerated by Slep-Tone.

**THE RIGHTS OF THE PLAINTIFF**

30. Plaintiff Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and renewed once, for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

31. Plaintiff Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows."

32. Plaintiff Slep-Tone is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and renewed once, for a display trademark as follows:



for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

33. Plaintiff Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows."

34. Slep-Tone has, for the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendant with notice

of those federal registrations through the consistent display of the symbol ® with its marks as used.

35. Principally, the Sound Choice Marks are indicators of Slep-Tone as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by Slep-Tone or at its direction and under its control.

36. Slep-Tone is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress").  This distinctive and protectable trade dress includes, at a minimum, (a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

37. Slep-Tone has used its trade dress continuously and substantially exclusively for a period of decades.

38. The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of Slep-Tone as a source, effectively functioning as a visual trademark.

39. The aforementioned trade dress serves to distinguish Slep-Tone's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by Defendant are capable of identifying a particular karaoke track as originating with Slep-Tone simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

40. The elements of the Trade Dress represent specific design choices by Slep-Tone; they are but three of many ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

41. No competitor of Slep-Tone is required to use any element of the Trade Dress to accomplish the lyric cueing, and indeed all of the Plaintiff's known competitors are known to use other trade dress in accomplishing the lyric cueing.

**ACTIVITIES OF HEATHER LAPADAT AND TWIN CITY KARAOKE**

42. Defendant provides karaoke services to various venues in Minnesota, principally concentrated in the Minneapolis and St. Paul, MN area.

43. On information and belief, in order to provide services, rather than using original karaoke discs that Defendant possesses (if Defendant indeed possesses such discs), Defendant relies upon one or more computer hard drives that are substantially identical in content that store files representing karaoke accompaniment tracks.

44. On information and belief, Defendant created, or directed another to create, or otherwise acquired from a third party the files that are stored on Defendant's computer hard drive(s).

45. On information and belief, Defendant does not maintain a 1:1 correspondence relationship between her hard drives and original discs Defendant might have lawfully acquired.

46. Slep-Tone did not authorize, cause, control, or know about the creation of the files stored on Defendant's computer hard drives at the time those files were so stored.

47. On information and belief, many of the files stored on the Defendant's computer hard drives are representative of karaoke tracks originally created by Slep-Tone and are marked with the Sound Choice Marks.

48. When played as intended using appropriate software, those files cause the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

49.     Slep-Tone did not authorize Defendant to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

50.     As such, the placement of the Sound Choice Marks and the Trade Dress upon Defendant's computer files is a false designation of the origin of those computer files.

51.     At all times relevant to the causes of action stated herein, Defendant has known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

52.     Defendant's files, which function as karaoke accompaniment tracks, are also counterfeits of genuine SOUND CHOICE-branded tracks.

53.     A patron or unwitting customer of Defendant, when confronted with the display of the Sound Choice Marks and the Trade Dress at one of Defendant's shows, is likely to be confused into believing, falsely, that Slep-Tone created the tracks in use or authorized their creation.

54.     Defendant's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because Defendant is paid to provide access to and play those computer files and tracks at karaoke shows.

55.     Additionally, even if a particular counterfeit track is not played at a given show, the act of making that track available for play at a show is a commercial act for which Defendant is compensated and which inure to Defendant's benefit.

56. On information and belief, Defendant's piracy of accompaniment tracks is not limited to Slep-Tone's tracks, but extends to the piracy of numerous other manufacturers' tracks as well, on the same terms as above.

57. On information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Defendant.

58. Slep-Tone obtained photographs and videos of displays of the Sound Choice Marks.

59. On information and belief, Defendant has not complied with Slep-Tone's MSP, and therefore Defendant's use of the Sound Choice Marks were not authorized proper use.

**ACTIVITIES OF THE NON-PARTY BARS AND RESTAURANTS**

60. Various non-party bars and restaurants have hired Defendant to provide commercial karaoke services at their establishments.

61. The Plaintiff reserves the right to amend this complaint to add these bars and restaurants in a manner consistent with the Federal Rules of Civil Procedure.

62. The non-party bars and restaurants have engaged Defendant to provide karaoke services at their establishments, or retained Defendant as a provider at their establishments, having been notified and therefore knowing that Defendant is engaged in trademark infringement and unfair competition while providing those services.

63. The non-party bars and restaurants each have the ability to control whether or not Defendant engages in trademark infringement and unfair competition when providing karaoke services at their establishments.

64. The non-party bars and restaurants have received a financial benefit from the provision of infringing karaoke services at their establishments by Defendant, through the attraction of paying patrons to their establishments.

65. As such, each of the non-party bars and restaurants are operating in actual or apparent partnership with Defendant, in a symbiotic relationship from which both benefit.

66. Each of the non-party bars and restaurants are liable for the acts of trademark infringement directly engaged in by Defendant on their respective premises or for their benefit.

**DAMAGES**

67. Defendant's unauthorized use of Slep-Tone's trademarks has damaged Slep-Tone.

68. Defendant and its principal have damaged Slep-Tone in an amount to be proven at trial but not less than $25,000 for each karaoke system they own or operate and which contains karaoke tracks that infringe the Sound Choice Marks and Trade Dress as detailed above, based upon their foregone purchase of original media.

69. Defendant has also enjoyed years of revenues attributable in substantial part to its use of counterfeit SOUND CHOICE-branded karaoke tracks to provide karaoke services for money.

70. Defendant's illicit activities have also allowed Defendant to compete unfairly against Slep-Tone's legitimate customers by lowering the cost of doing business through piracy of the music materials Defendant uses.

71. Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which Defendant operates by helping to crowd higher-cost but legitimate operators out of the market.

72. Defendant's acts deprived Slep-Tone of revenue by discouraging legitimate operators from investing in legitimate SOUND CHOICE-branded products.

## FIRST CLAIM FOR RELIEF
## TRADEMARK AND TRADE DRESS INFRINGEMENT AGAINST DEFENDANT

73. Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-72 of this Complaint.

74. Defendant used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

75. Defendant's use of the Sound Choice Marks and the Trade Dress was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

76. Slep-Tone did not license Defendant to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks or the Trade Dress in connection with the services provided at Defendant's venue(s).

77. Use of the Sound Choice Marks and the Trade Dress in the manner attributable to Defendant is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which Defendant performs into believing that the services those customers are receiving are being provided with the authorization of the Slep-Tone using bona fide, legitimate, authorized karaoke accompaniment tracks.

78. Defendant's acts were willful and knowing.

79. Slep-Tone has been damaged by infringing activities of Defendant.

80. Unless enjoined by the Court, Defendant's infringing activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

**SECOND CLAIM FOR RELIEF**
**UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**
**AGAINST DEFENDANT**

81. Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-72 of this Complaint.

82. On each occasion when Defendant caused or permitted a Slep-Tone accompaniment track to be played during a karaoke show, Defendant caused or permitted the display of the Sound Choice Marks and the Trade Dress in connection with Defendant's karaoke entertainment services.

83. The display of the Sound Choice Marks and the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that Slep-Tone sponsored or approved Defendant's services and commercial activities.

84. The display of the Sound Choice Marks and the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by Slep-Tone and purchased by Defendant for use in providing karaoke entertainment services.

85. The Defendant's use of the Sound Choice Marks and the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of Slep-Tone if

Defendant had legitimately acquired bona fide original media instead of counterfeiting them or acquiring counterfeit copies, in that Slep-Tone would have received revenue from such sales.

86. Because Slep-Tone has been denied this revenue, it has been damaged by Defendant's uses.

87. On each occasion when the Defendant displayed an accompaniment track pirated from a manufacturer other than Slep-Tone to be played during a karaoke show, Defendant caused the display of the words, names, and symbols of the other manufacturer in connection with Defendant's karaoke services.

88. Upon information and belief, the Defendant's use of those words, names, and symbols falsely designates the other manufacturer as the origin of the pirated track, when in fact Defendant or an upstream but unauthorized provider of the track was the origin of that track.

89. The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that the Defendant acquired in a legitimate manner. The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by the Defendant.

90. The Defendant's use of the false designations of origin in this fashion damages Slep-Tone by enabling Defendant to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately, including Slep-Tone’s legitimate customers.

91. The consequential denial of revenue from a legitimate market for Slep-Tone's customers' services prevents Slep-Tone's customers from making purchases of material from Slep-Tone and is thus a denial of revenue to Slep-Tone.

92. Because Slep-Tone has been denied this revenue, it has been damaged by Defendant's false designations of origin relating to other manufacturers.

93. Unless enjoined by the Court, Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

**THIRD CLAIM FOR RELIEF**
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**AGAINST DEFENDANT**

94. Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-72 of this Complaint.

95. Defendant used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

96. Defendant's acts of infringement occurred during the conduct of trade or commerce, from which Defendant derived an economic benefit.

97. Defendant's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

98. Defendant's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Slep-Tone.

99. As a direct and proximate result of the Defendant's acts of infringement Slep-Tone has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Defendant's acts in creating or acquiring counterfeits of Slep-Tone's accompaniment tracks.

100. As such, Slep-Tone has been damaged and is likely to be further damaged by a deceptive trade practice of Defendant within the meaning of Minn. Stat. § 325D.44.

101. Unless enjoined by the Court, Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION AGAINST DEFENDANT

102. Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-72 of this Complaint.

103. Defendant used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

104. Defendant's use of the Sound Choice Marks and the Trade Dress was "in commerce" within the meaning ascribed by Minnesota common law.

105. Slep-Tone did not license Defendant to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks or the Trade Dress in connection with the services provided at its night club.

106. Use of the Sound Choice Marks and the Trade Dress in the manner attributable to the Defendant is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which the Defendant performs into believing that the services those customers are receiving are being provided with the authorization of the Slep-Tone using bona fide, legitimate, authorized karaoke accompaniment tracks.

107. Defendant's acts were willful and knowing.

108. Slep-Tone has been damaged by infringing activities of Defendant.

109. Unless enjoined by the Court, Defendant's infringing activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Slep-Tone prays for judgment against the Defendant that the Court:

A. Find that the Defendant has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks and of the Trade Dress;

B. Find that the Defendant has engaged in unfair competition detrimental to Slep-Tone in violation of 15 U.S.C. § 1125(a);

C. Enter judgment against the Defendant and in favor of Slep-Tone on all applicable counts;

D. Find that the Defendant's activities were in all respects conducted willfully and for profit;

E. Award to Slep-Tone the Defendant's profits and the damages sustained by Slep-Tone because of the Defendant's conduct in infringing the Sound Choice Marks, the Sound Choice Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by

counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Defendant, and not less than $50,000 for each establishment in which the infringement occurred;

  F. Award to Slep-Tone the Defendant's profits and the damages sustained by Slep-Tone because of the Defendant's' acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Defendant, and not less than $50,000 for each establishment in which the infringement occurred;

  G. Award to Slep-Tone treble, punitive, or otherwise enhanced damages, as available, for the Defendant's acts of willful infringement;

  H. Order all computer discs, drives, or other media belonging to the Defendant, which media contain counterfeits of Slep-tone's marks or Trade Dress or of marks belonging to other manufacturers, to be delivered up for destruction.

  I. Grant Slep-Tone preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade dress by the Defendant;

  J. Grant Slep-Tone preliminary and permanent injunctive relief against further false designations of origin by the Defendant with respect to words, names and symbols associated with other manufacturers;

  K. Award Slep-Tone its costs of suit and attorney fees, to the extent not awarded above; and

  L. Grant Slep-Tone such other and further relief as justice may require.

**Respectfully submitted,**

Dated: November 12, 2014

By: /s/Jessica M. Alm

David R. Fairbairn (No. 28,125)
Jessica M. Alm (No. 395,245)
KINNEY & LANGE, P.A.
The Kinney & Lange Building
312 South Third Street
Minneapolis, MN 55415-1002
Email: drfairbairn@kinney.com
jalm@kinney.com
Telephone: (612) 339-1863
Facsimile: (612) 339-6580

**ATTORNEYS FOR PLAINTIFF SLEP-TONE ENTERTAINMENT CORPORATION**