# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

PHOENIX ENTERTAINMENT
PARTNERS, LLC,

Case No. 14-CV-4737 (PJS/FLN)

Plaintiff,

v.

ORDER

HEATHER LAPADAT d/b/a TWIN CITY
KARAOKE,

Defendant.

David R. Fairbairn and Jessica M. Alm, KINNEY & LANGE, PA, for plaintiff.

Allen W. Hinderaker, William D. Schultz, and Emily M. Wessels, MERCHANT &
GOULD PC, for defendant.

Defendant Heather Lapadat d/b/a Twin City Karaoke is a karaoke jockey (or

"KJ") who stages karaoke events at bars and other venues in Minnesota.  Plaintiff

Phoenix Entertainment Partners, LLC ("Phoenix") produces karaoke accompaniment

tracks.  Phoenix brought this lawsuit against Lapadat, alleging that Lapadat plays

unauthorized copies of Phoenix tracks during her performances in violation of both

federal and state law.  Lapadat has moved to dismiss Phoenix's complaint.  For the

reasons that follow, the Court grants in (small) part and denies in (large) part Lapadat's

motion.

1

# I. BACKGROUND

Phoenix produces karaoke accompaniment tracks, which include both the background music that accompanies karaoke singers and the lyrics that are displayed to the singers. The tracks produced by Phoenix are sold under the label "Sound Choice." Compl. ¶10. Phoenix alleges that it has built a reputation for producing "music of the highest quality and the most authentic character," so that its Sound Choice label has become "the most recognizable and sought-after in the industry." *Id.* ¶12; *see also id.* ¶10.

Phoenix owns two registered trademarks and two registered service marks in connection with the Sound Choice label. First, Phoenix owns a trademark for SOUND CHOICE. *Id.* ¶30. Second, Phoenix owns a trademark for the Sound Choice graphic—a musical staff with the words "Sound Choice" superimposed in a stylized font. *Id.* ¶32. Both trademarks are for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." *Id.* ¶¶ 30, 32. Third, Phoenix owns a service mark for SOUND CHOICE. *Id.* ¶31. Fourth, Phoenix owns a service mark for the Sound Choice graphic. *Id.* ¶33. Both service marks are for "conducting entertainment exhibitions in the nature of karaoke shows." *Id.* ¶¶ 31, 33. Phoenix also alleges that it uses protected

trade dress, which includes, for example, the style of the cues that are displayed to karaoke singers. *Id.* ¶36.

Phoenix sells its accompaniment tracks on encoded discs; these discs, however, can be easily decoded and copied. *See id.* ¶¶ 14, 16, 43. There are two ways to copy the discs. "Media shifting" occurs when discs are copied from their original media (compact discs) to a different media (e.g., computer hard drive). *Id.* ¶17. "Format shifting" happens when the original format (the encoded "CD+G" format) is converted to another format (e.g., MP3+G). *Id.* ¶18. Media shifting frequently involves format shifting. *Id.* Phoenix authorizes owners of the original discs to make copies of them, but only if the owners comply with Phoenix's Media-Shifting Policy. That policy requires, among other things, a 1:1 correspondence between the original media and the media-shifted copies. *Id.* ¶26.

Lapadat is hired to stage karaoke events at various venues in Minnesota. *Id.* ¶¶ 7, 42, 54. Phoenix alleges that Lapadat, in the course of performing her services, uses unauthorized copies of Sound Choice accompaniment tracks. Phoenix has not, however, sued Lapadat for copyright infringement—that is, for using or reproducing its accompaniment tracks without its permission. Rather, Phoenix has sued Lapadat for the allegedly unauthorized use of its trademarks and service marks.[1] Phoenix

─────────────────

[1]Phoenix's claims are not preempted by copyright law, as Lapadat argues. Phoenix has been clear that it is not suing Lapadat for making unauthorized copies of

complains that Lapadat has unlawfully used its marks in two ways: First, the marks appear on the unauthorized accompaniment tracks that are stored on the hard drive of Lapadat's computer. *Id.* ¶¶ 43, 47, 50–51. Second, the marks are displayed to singers and others when Lapadat plays the unauthorized tracks at events. *Id.* ¶¶ 48, 57, 82.

Phoenix has brought four claims under the Lanham Act—two under § 32 (15 U.S.C. § 1114) for trademark infringement and two under § 43(a) (15 U.S.C. § 1125(a)(1)) for unfair competition. Each of these sections applies to both infringing *goods* and infringing *services*. Under § 32, Phoenix alleges trademark infringement and trade dress infringement with respect to the use of its marks on the unauthorized tracks stored on Lapadat's hard drive (goods) and with respect to the display of its marks during Lapadat's karaoke shows (services). Under § 43(a), Phoenix alleges unfair competition, again with respect to both the unauthorized tracks (goods) and the performances (services).

---

its tracks. Instead, it is suing Lapadat for using Sound Choice marks on non-Sound Choice goods and services. This is classic "passing off"—a violation of trademark law. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's."); *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1241 (8th Cir. 1994) (listing "palming off" as a "typical Lanham Act claim"); *see also Slep-Tone Entm't Corp. v. Sellis Enters., Inc.*, No. 13 C 08070, 2015 WL 1593498, at *4–5 (N.D. Ill. Apr. 3, 2015) (rejecting copyright-preemption argument); *Slep-Tone Entm't Corp. v. Arrowood*, No. 2:10-CV-592, 2011 WL 4482082, at *3 (S.D. Ohio Sept. 26, 2011) (same).

In addition to its Lanham Act claims, Phoenix has also brought state-law claims against Lapadat. Specifically, Phoenix alleges that Lapadat is liable under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44, and under Minnesota common law.

## II. ANALYSIS

### A. Standard of Review

Lapadat moves to dismiss Phoenix's claims for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, a court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B. Lanham Act Claims

Lapadat argues that Phoenix's complaint does not plausibly allege each of the elements necessary to recover under the Lanham Act. Sections 32 and 43(a) of the

Lanham Act prohibit the unauthorized use of trademarks or service marks in a manner that is likely to cause consumer confusion. Section § 43(a) is, however, broader than § 32. For example, § 32 protects only registered marks, whereas § 43(a) protects unregistered marks as well. And § 32 requires that the infringing use of a mark be "in connection with the *sale*" of goods or services; § 43(a) merely requires that the infringing use of a mark be "in connection with any goods or services." Otherwise, the elements of claims brought under the two sections are similar.

Section 32 prohibits (1) the "use in commerce" of any unauthorized trademark; (2) "in connection with the sale, offering for sale, distribution, or advertising of any goods or services;" (3) where "such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a). Section 43(a) of the Lanham Act prohibits (1) the "use[] in commerce" of any false designation, description, or representation; (2) "in connection with any goods or services;" (3) where such use is "likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [the infringer's] goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1)(A).

### 1. Use in Commerce

Section 45 of the Lanham Act provides that, with respect to *goods*, a mark is "use[d] in commerce" when:

6

> (A) it is placed in any manner on the goods or their
> containers or the displays associated therewith or on the tags
> or labels affixed thereto, or if the nature of the goods makes
> such placement impracticable, then on documents associated
> with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce . . . .

15 U.S.C. § 1127. Section 45 also provides that, with respect to *services*, a mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." *Id.*

Phoenix's complaint adequately alleges that Lapadat used its marks in commerce. As to goods: Phoenix alleges that Lapadat stored unauthorized Sound Choice accompaniment tracks on the hard drive of her computer and that these files were marked with the Sound Choice trademarks. Compl. ¶¶ 43, 47, 50–51. Phoenix further alleges that Lapadat transported these computer files to various venues in Minnesota in order to play the files during her paid performances. *See id.* ¶¶ 42, 54. A computer file is a "good," and Phoenix has adequately alleged that its trademarks were "placed in any manner on the goods" and that "the goods are sold or transported in commerce." 15 U.S.C. § 1127.

As to services: Phoenix alleges that, when Lapadat played the unauthorized tracks at her paid performances, the Sound Choice service marks were displayed to the singers (and, presumably, to others). *Id.* ¶¶ 48, 57, 82. When a performer (such as

Lapadat) is hired to provide entertainment (such as a karaoke show), a mark that is used in connection with that performance is "an element of the 'sale' thereof within the meaning of the [Lanham] Act . . . ." *In Re Red Robin Enters., Inc.*, 222 U.S.P.Q. 911, at *3 (P.T.O. June 22, 1984). Thus, Phoenix has adequately alleged that Lapadat "used or displayed" its service marks "in the sale . . . of [her] services" and that her services were "rendered in commerce." 15 U.S.C. § 1127.[2]

---

[2]The first sentence of the Lanham Act's definition of "use in commerce" provides that "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." Because this sentence refers to the *bona fide* use of a mark, it does not appear to define "use in commerce" for purposes of §§ 32 and 43(a)—which, after all, relate to the *infringing* use of a mark. Instead, this sentence appears to address the legitimate use of a mark by an owner who seeks to register it. *See Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 139 (2d Cir. 2009) (appendix) (". . . Congress did not intend that this definition [in § 45] apply to the sections of the Lanham Act which define infringing conduct. The definition was rather intended to apply to the sections which used the phrase in prescribing eligibility for registration and for the Act's protections."); 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed. 2015) (author's comment) ("If one were to substitute the Lanham Act § 45 definition of 'use in commerce' into the § 32(1) infringement requirement, the result would be awkward and inept."). *But see Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 761 & n.2 (8th Cir. 2010) (expressing "no view as to whether section 45's 'use in commerce' definition continues to properly apply in infringement cases" but noting that the circuit has "previously interpreted section 45 as requiring 'use in commerce' as a prerequisite for infringement liability" (citing *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003)).

## 2. "In Connection With" Goods or Services

### a. Section 32

Section 32 of the Lanham Act requires that the use of the unauthorized mark be "in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . ." 15 U.S.C. § 1114(1)(a).

Phoenix's complaint does not plausibly plead that Lapadat violated § 32 by using its trademarks on files stored on her computer's hard drive or on any other *goods*. No where in Phoenix's complaint does it allege that Lapadat sold or tried to sell any of the unauthorized computer files. Thus, Phoenix has not plausibly alleged that Lapadat used its trademarks "in connection with the sale, offering for sale, distribution, or advertising of any goods." 15 U.S.C. § 1114(1)(a).

Phoenix disagrees and argues that ¶ 47 of its complaint "exemplifies" an allegation related to the sale of goods. This paragraph states: "On information and belief, many of the files stored on the Defendant's computer hard drives are representative of karaoke tracks originally created by [Phoenix] and are marked with the Sound Choice Marks." At most, this paragraph establishes that Lapadat *possesses* unauthorized karaoke tracks; there is no allegation that Lapadat *sold* or tried to sell those tracks. Reading the complaint as a whole, *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009), Phoenix has not pleaded that Lapadat sold any goods, let alone that Lapadat used Phoenix's marks in connection with a sale of goods.

Phoenix has, however, sufficiently pleaded that Lapadat violated § 32 by using its service marks in connection with her performances. As noted, Phoenix alleges that Lapadat sells her services to bars and other venues and that, when she performs those services, she displays the Sound Choice service marks to singers and others. As also noted, when a performer is hired to provide entertainment, a mark that is used in the course of that performance is "an element of the 'sale' thereof within the meaning of the [Lanham] Act . . . ." *In Re Red Robin Enters., Inc.*, 222 U.S.P.Q. 911, at *3 (P.T.O. June 22, 1984); *cf. Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F. Supp. 619, 623 (S.D.N.Y. 1981) ("The underlying purpose of these Lanham Act sections [§§ 32 and 43(a)] is the protection of the public, and other competitors, from any misleading advertising or packaging which results in unfair competition. . . . The Act is to be broadly construed in order to achieve its remedial objectives." (citation omitted)). Phoenix's allegation that Lapadat displayed the Sound Choice marks to singers and others in the course of her karaoke performance (*see, e.g.*, Compl. ¶¶ 42, 48, 54, 57, 74–75) sufficiently alleges that Lapadat used the marks "in connection with the sale . . . of . . . services." 15 U.S.C. § 1114(1)(a).

### b. Section 43(a)

While § 32 requires that the use of the unauthorized mark be "in connection with the *sale* . . . of any goods or services" (emphasis added), § 43(a) requires only that the use of the unauthorized designation be "in *connection* with any goods or services"

(emphasis added).  *Compare* 15 U.S.C. § 1114(1)(a), *with* 15 U.S.C. § 1125(a)(1).  Phoenix

sufficiently alleged that Lapadat used the Sound Choice service marks "in connection

with . . . services" when she displayed the marks to singers and others during her

karaoke shows.  *See, e.g.*, Compl. ¶¶ 48, 82.  Phoenix also sufficiently alleged that

Lapadat used the Sound Choice trademarks "in connection with . . . goods"—

specifically, in connection with the unauthorized karaoke tracks stored on her

computer's hard drive.  *See, e.g.*, Compl. ¶¶ 50, 84, 88–89.

### 3.  Likelihood of Confusion

The main argument that Lapadat makes in seeking dismissal of the Lanham Act

claims is that Phoenix has not sufficiently alleged that Lapadat's unauthorized use of its

marks created a "likelihood of confusion" for purposes of §§ 32 and 43(a).  A

"'[l]ikelihood of confusion' exists when the defendant's use of a mark is likely to

confuse, deceive or cause mistake among an appreciable number of ordinary buyers as

to the source of or association between the parties' products or services."  *Davis v. Walt

Disney Co.*, No. 04-CV-1729, 2004 WL 1895234, at *3 (D. Minn. Aug. 23, 2004) (citing

*Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996)).  Lapadat

stresses that she is a provider of karaoke services (not accompaniment tracks), and that

Phoenix is a provider of accompaniment tracks (not karaoke services).  Thus, Lapadat

argues, those who show up at a bar on a Friday night to participate in one of her

karaoke events are unlikely to be confused about the source of her karaoke

services—that is, to mistakenly believe that the karaoke services are not being provided by Heather Lapadat of Twin City Karaoke, but instead by some other KJ affiliated with some other provider of karaoke services.

But Phoenix has alleged that Lapadat's use of the Sound Choice marks is likely to create consumer confusion—not because consumers will believe that Lapadat is affiliated with another local provider of karaoke services, but because consumers will believe that Lapadat is affiliated with *Phoenix*. It is true that this allegation is barely made in the complaint; in fact, it appears only in a single sentence in ¶ 77 ("Use of the Sound Choice Marks and the Trade Dress in the manner attributable to Defendant is likely to . . . deceive customers at the venues in which Defendant performs into believing that the services those customers are receiving are being provided with the authorization of [Phoenix] . . . .") and in a single sentence in ¶ 83 ("The display of the Sound Choice Marks and the Trade Dress is likely to . . . deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that [Phoenix] sponsored or approved Defendant's services and commercial activities.").

It is also true that this allegation is somewhat difficult to believe. It seems rather unlikely that, even if a karaoke singer or bar patron noticed the Sound Choice mark or trade dress in connection with some of the tracks played by Lapadat, that consumer would conclude that Lapadat was affiliated with Phoenix or had somehow been authorized by Phoenix to provide karaoke services. But to survive a motion to dismiss,

Phoenix's allegations need only be plausible, not probable. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement . . . ." (internal quotation marks omitted)); *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks omitted)).

In sum, Phoenix has pleaded plausible claims under both § 32 and § 43(a) of the Lanham Act in connection with Lapadat's display of its *service* marks (and trade dress) in the course of her performances. Phoenix has also pleaded a plausible claim under § 43(a) of the Lanham Act in connection with Lapadat's use of its *trademarks* (and trade dress) on the unauthorized files stored on the hard drive of her computer. Phoenix has not, however, pleaded a plausible claim under § 32 of the Lanham Act in connection with Lapadat's use of its *trademarks* on the unauthorized files stored on the hard drive of her computer, and thus that claim is dismissed without prejudice.

One other matter relating to the Lanham Act needs to be addressed. Phoenix claims that it is entitled to the remedy for counterfeiting found in 15 U.S.C. § 1116(d)(1), which provides that "[i]n the case of a civil action arising under section [32] . . . the court may, upon ex parte application, grant an order . . . for the seizure of goods and counterfeit marks involved in such violation . . . ." 15 U.S.C. § 1116(d)(1)(A). But the Court has already held that Phoenix has not pleaded a plausible claim under § 32 with respect to Lapadat's computer files or any other goods. And with respect to services,

Phoenix has not alleged—as § 1116(d)(1)(B)(i) requires—that its service marks are "in use." Thus, Phoenix's claim for the remedy for counterfeiting provided under 15 U.S.C. § 1116(d)(1) is dismissed without prejudice.

### C. MDTPA and Common Law Claims

Phoenix makes a claim for deceptive trade practices under § 325D.44 of the MDTPA. Compl. ¶¶ 97, 100. Some of the prohibitions of the MDTPA are quite similar to the prohibitions of § 43(a) of the Lanham Act. *Compare* Minn. Stat. § 325D.44 ("A person engages in a deceptive trade practice when, in the course of business . . . , the person . . . causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services . . . ."), *with* Lanham Act § 43(a) ("Any person who, on or in connection with any goods or services . . . uses in commerce any [mark] which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods [or] services . . . shall be liable in a civil action . . . .").

Lapadat argues, and Phoenix does not appear to contest, that Phoenix's MDTPA claim mirrors its claim under § 43(a) of the Lanham Act and should be analyzed similarly. *See Hillerich & Bradsby Co. v. Christian Bros., Inc.*, 943 F. Supp. 1136, 1140 (D. Minn. 1996) (comparing the MDTPA, Minn. Stat. § 325D.44, with § 43(a) of the Lanham Act and concluding that "[i]n the context of trademark infringement, the Minnesota Deceptive Trade Practices Act creates claims that mirror those under the

Lanham Act"); *see also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003)

("The district court concluded, and the parties appear to concede, that the state law

[trademark and unfair competition] claims are coextensive with the federal [Lanham

Act] claims.  As such, we do not discuss them independently.").  For the reasons that

the Court has denied Lapadat's motion to dismiss Phoenix's claims under § 43(a) of the

Lanham Act, the Court also denies Lapadat's motion to dismiss Phoenix's claims under

the MDTPA.

Phoenix has also asserted an unfair-competition claim under Minnesota common

law.  Again, the parties seem to agree that the elements of this claim are quite similar to

the elements of a claim under § 43(a) of the Lanham Act, except that a plaintiff asserting

a common-law claim must allege that it suffered actual injury.  *See Lutheran Ass'n of*

*Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc.*, No. 03-CV-6173,

2005 WL 629605, at *4 (D. Minn. Mar. 15, 2005) ("Although a claim for common law

unfair competition parallels a claim for unfair competition under the Lanham Act

[§ 43(a)(1)(A)], Minnesota common law requires [plaintiff] to prove that it suffered

actual injury from [defendant's] unauthorized use of the marks." (citation omitted)).

The Court has held that Phoenix has pleaded plausible claims under § 43(a) of

the Lanham Act.  Moreover, Phoenix has adequately alleged actual injury.  *See, e.g.*,

Compl. ¶¶ 67–72, 108.  Thus, Lapadat's motion to dismiss the common-law unfair-

competition claim is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion to dismiss [ECF No. 12] is

GRANTED IN PART AND DENIED IN PART as follows:

1.      To the extent that plaintiff makes a claim under 15 U.S.C. § 1114 for use of

        its trademarks with respect to goods, defendant's motion is GRANTED

        and the claim is DISMISSED WITHOUT PREJUDICE.

2.      To the extent that plaintiff claims to be entitled to the remedy for

        counterfeiting provided under 15 U.S.C. § 1116(d)(1), defendant's motion

        is GRANTED and the claim is DISMISSED WITHOUT PREJUDICE.

3.      Defendant's motion is DENIED in all other respects.


 Dated:  August 12, 2015                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge